The undersigned have reviewed the prior Opinion and Award based upon the proceedings before Deputy Commissioner Dollar. The appealing party has shown good ground to reconsider the evidence. Therefore, the Full Commission rejects and reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Willis/RISKCo/ Alexsis as the servicing agents.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiffs average weekly wage was $504.17, which yields a weekly compensation rate of $336.13.
5. The issue for determination is whether the plaintiff has contracted a compensable occupational disease, and if so, to what benefits is he entitled under the Act.
6. The parties stipulated the following exhibits into the evidentiary record:
a. Stipulated 1, Medical Records, twenty pages;
b. Stipulated 2, Accident Benefits, nine pages;
c. Stipulated 3, Videotape of the Job; and
d. Defendants 1, Application for Sickness Benefits, one page.
7. Plaintiff retains a twenty-one percent permanent impairment to his left arm, as found by Dr. Connor.
8. Plaintiff was out of work for sixty days in 1997 and thirty-four days in 1998 as a result of his left shoulder condition.
9. The depositions of Dr. Patrick Connor, Dr. Samuel Moon and Dr. William Pekman are a part of the evidentiary record in this matter. In addition, the parties submitted a two-page evaluation by Dr. David Hillsgrove, which is also a part of the evidentiary record.
 ***********
Based upon all of the evidence of record, the Full Commission finds as follows
 FINDINGS OF FACT
1. Plaintiff, born on January 29, 1949, is left-hand dominant and has earned a G.E.D.
2. Forest City Tools hired plaintiff in approximately 1979 as a tool grinder. Thereafter, in 1994, DML Industrial Products, a subsidiary of Defendant Vermont American Corporation, purchased Forest City Tools. Plaintiff continued to work as a tool grinder, making tools for the woodworking industry.
3. Plaintiffs duties as a tool grinder included lifting cutter heads weighing as much as between fifteen and eighty pounds. These cutter heads were positioned on the machine to grind and prepare the tools. Plaintiff would pull a lever and grasp and lift the cutter head to put it on the machine. After a cutter head was in position on the machine, plaintiff would grind the OD of the cutter. This required turning a handle to go across each tooth and then turning the handle to come back across. A sharpening job could take ten to fifteen minutes while a repair would take longer or with all new teeth, a re-tip, it could take up to forty-five minutes to complete a job. Furthermore, the larger cutters would take longer to sharpen than the smaller ones. Accordingly, the number of times plaintiff moved the cutters depended on these factors. He could have performed this activity twenty to twenty-five times a day or less. Afterwards, to remove the cutter head, plaintiff would reach around to the left side holding pressure against the cutter and pull the lever holding the weight of the cutter swinging it back towards him and lifting it out by hand. Although plaintiff lifted the cutter in and out of the machine, a hoist system was later installed in approximately 1996 to lift the cutter heads in and out of the machine. The cutter would be taken off of a table and placed in a buggy and taken over to the machine table, which was approximately the same height as the buggy where the cutter would be placed into the hoist sling to be lifted into the machine.
4. Furthermore, plaintiff indicated that the machine at his worktable was difficult to operate and that the handle on it would stick. Plaintiff indicated that the difficulty occurred when he cranked the big handle in the back which plaintiff used five, ten or fifteen times a day depending on how many different size cutter heads were used on a given day.
5. Defendant presented a videotape description of the job of tool grinder as performed by plaintiff with the exception that the videotape depicted the hoist, which was installed in 1996 during plaintiffs first time out of work. Furthermore, the videotape did not show the cutters being placed into the buggy and brought over to the machine table and placed into the hoist sling.
5. In September of 1996, plaintiffs left arm began to hurt. Although plaintiffs supervisor was aware that plaintiff was having shoulder problems, plaintiff did not report a work related injury until April 17, 1998.
6. On September 24, 1996, plaintiff went to Hickory Orthopaedic Center where Dr. William Pekman examined him. Plaintiff was initially diagnosed with left shoulder strain and was given cortisone injections.
7. Plaintiff returned to Dr. Pekman after his left shoulder pain recurred. He was diagnosed with recurrent rotator cuff tendinitis, for which therapy was ordered. On April 7, 1997, Dr. Pekman found plaintiff had a possible rotator cuff tear. Consequently, on May 28, 1997, Dr. Pekman performed an acromioplasty and left rotator cuff repair. By June 19, 1997, plaintiff began physical therapy.
8. On July 24, 1997, plaintiff exhibited a full range of motion and, at his request, was released to return to work with defendant employer with no restrictions after missing approximately eight weeks of work. Plaintiff returned to his former position where the hoist had been installed.
9. By December 22, 1997, plaintiff returned to Dr. Pekman with recurrent shoulder pain, which was diagnosed as bicipital tendinitis. After diagnostic studies were performed, plaintiff was diagnosed with left carpal tunnel nerve compression.
10. Plaintiff became dissatisfied with his recovery and sought treatment from Dr. Patrick Connor at The Miller Clinic. On March 25, 1998, Dr. Connor found anterolateral acromial spurring, partial thickness or possible full rotator cuff tear at the supreaspinatus insertion, and changes at the AC joint. Dr. Connor felt that plaintiff had returned to work too soon following the surgery.
11. On November 23, 1998, Dr. Connor performed glenohumeral arthroscopy, limited debridement of anterior superior labrum and rotator cuff revision, arthroscopic subacromial decompression, arthroscopic distal clavicle excision and mini-open rotator cuff repair. Following surgery, plaintiff underwent a course of physical therapy.
12. Plaintiff returned to work with defendant on December 28, 1998 but eventually plaintiff voluntarily left his employment with defendant for employment with Siecor in June or July of 1999.
13. Plaintiff called two witnesses who also worked for defendant. However, only one of the witnesses actually performed the job plaintiff performed and neither had shoulder or rotator cuff injuries. Both witnesses reviewed the videotape provided by defendant and did not significantly dispute its accuracy, but indicated that the activity of set up and moving the cutters was not shown.
14. The videotape provided by defendant and hypothetical questions posed by both plaintiff and defendant containing additional facts from plaintiff and his witnesses were presented to the medical experts in this case. Based upon this cumulative information, the medical experts including Dr. Connor, Dr. Moon and Dr. Pekman were unable to state to a reasonable degree of medical probability that plaintiffs employment with defendant employer significantly contributed to or caused him to develop rotator cuff tendinitis and a rotator cuff tear or placed plaintiff at a greater risk of developing an occupational disease involving his left upper extremity as compared to the general public. Accordingly, plaintiff has failed to prove by the greater weight of the evidence that his job duties with defendant significantly contributed to or caused him to develop rotator cuff tendinitis and a rotator cuff tear or that his job duties placed him at an increased risk of developing rotator cuff tendinitis and a rotator cuff tear than members of the general public not equally exposed.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSION OF LAW
Plaintiff has failed to carry his burden of proving that he sustained an occupational disease arising out of and in the course and scope of his employment in that he has failed to prove that his employment significantly contributed to or caused him to develop rotator cuff tendinitis and a rotator cuff tear or that his job duties placed him at a greater risk as compared to the general public of contracting rotator cuff tendinitis and a rotator cuff tear. Consequently, plaintiff is not entitled to benefits under the Act. N.C.G.S. 97-53(13) Hansel v. ShermanTextiles, 304 N.C. 44, 283 S.E.2d 101 (1981).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiffs claim is hereby, and the same shall be, denied.
2. Each side shall bear its own costs.
This the ___ day of June 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER